Charles D. RAGLAND, Commissioner of Revenues, Department of Finance and Administration *v.* McLANE COMPANY, INC.

85-119                                     697 S.W.2d 892

Supreme Court of Arkansas
Opinion delivered October 21, 1985
[Rehearing denied November 12, 1985.*]

---

* Purtle, J., not participating.

*Revenue Legal Counsel*, for appellant.

*Norman, Howell, Smith & Lee, P.C.*, and *Wright, Lindsey & Jennings*, for appellee.

DAVID NEWBERN, Justice. McLane Company, Inc., the appellee, is a Texas corporation which was denied a permit to sell tobacco products in Arkansas. The appellant denied the permit because the company did not meet the residency requirements of Ark. Stat. Ann. §§ 84-4502(s) and 84-4505(f) (Supp. 1985). The chancellor declared the statutory residence requirements unconstitutional. We affirm.

Section 84-4502(s) defines a tobacco "wholesaler" as one who sells tobacco products to Arkansas retailers "from an established place of business within this state." Section 84-4505(f) provides:

> (1) No Wholesale Cigarette Permit, Wholesale Tobacco Permit or General Tobacco Products Vending Permit shall be granted to any individual or person who is not a citizen and bona fide resident of the state of Arkansas and who has not been domiciled in the State continuously for at least one (1) year next preceding the date of application for permit.

> (2) No Wholesale Cigarette Permit, Wholesale Tobacco Permit or General Tobacco Products Vending Permit shall be granted to any person who has a manager, director, officer, member or principal stockholder who would be ineligible to obtain a permit under provisions of this

subsection. [Acts 1977, No. 546, § 5, p. 1357; 1979, No. 911, § 6, p. 2024; 1983, No. 255, § 3, p. 353.]

In *Wometco Services, Inc.* v. *Gaddy*, 272 Ark. 452, 616 S.W.2d 466 (1981), we held those provisions to be in violation of the Commerce Clause of the U.S. Constitution. However, our opinion noted that:

> [t]here is no provision in this or any other act in this State relating to the health, safety or welfare of tobacco vendors or purchasers. The sale of cigarettes can affect the public health and therefore might be prohibited or strictly regulated. If we had any such laws in Arkansas, a different question would be presented. [272 Ark. at 454, 616 S.W.2d at 468.]

After the decision in *Wometco Services, Inc.* v. *Gaddy, supra*, the General Assembly amended Ark. Stat. Ann. § 84-4503 (Supp. 1985), which is part of the statutory scheme containing the sections mentioned above, so that it now notes that the Surgeon General of the United States has declared that smoking of cigarettes is detrimental to the health of the smoker. It further declares that the state has ". . . a very valid governmental interest in preserving and promoting the public health and welfare of its citizens. . . ." It also provides for inspection of tobacco products to assure they are "fresh and not contaminated." These amendments apparently were enacted to cure the statute of the constitutional infirmity diagnosed in *Wometco Services, Inc.* v. *Gaddy, supra*. They do not succeed.

■ The statutory scheme under consideration is not merely a burden on interstate commerce, it brings tobacco commerce to a halt at our borders unless it is conducted by Arkansans. The U. S. Supreme Court has said that a statute which thus discriminates on its face is fatally defective even if a legitimate purpose is recited because the evil of economic protectionism may lurk in the means as well as the ends chosen by the legislature. *Hughes* v. *Oklahoma*, 411 U.S. 322 (1979); *Philadelphia* v. *New Jersey*, 437 U.S. 617 (1978). *See also Bacchus Imports, Ltd.* v. *Dias*, ___ U.S. ___, 104 S.Ct. 3049 (1984).

■ Even if we found only an incidental, rather than patent, interstate commerce burden and thus were required to balance a

legitimate state purpose against that burden, we would hold these statutes invalid. We find no rational or other relationship between the requirement that only Arkansans bring cigarettes here for sale and the stated purpose of seeing to it that the tobacco is fresh and uncontaminated. Nor can we fathom how Arkansas inspectors will be aided in assuring freshness and lack of contamination by the fact that persons from other states are precluded from bringing tobacco to Arkansas. Nothing in the statutory scheme even purports to do anything about the danger declared by the Surgeon General to which the legislation now alludes.

In *Hughes* v. *Oklahoma, supra,* the Supreme Court pointed out the necessity of discerning "the practical impact of the law" without being bound by "the name, description or characterization given it by the legislature. . . ." [quoting *Lacoste* v. *Louisiana Department of Conservation,* 263 U.S. 454 (1924)]. The practical effect of the laws under consideration is unrelated to the purposes stated.

As in *Wometco Services, Inc.* v. *Gaddy, supra,* we decline to declare the entire statutory scheme invalid. Again, our holding is that the statutes are unconstitutional only to the extent they prevent nonresidents from engaging in business in Arkansas.

Affirmed.

PURTLE, J., not participating.